# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARCUS HAYES,  Case No. 1:12-cv-740
     Petitioner,

vs.  Dlott, J.
     Bowman, M.J.


WARDEN, FRANKLIN MEDICAL  **REPORT AND**
CENTER ZONE B,  **RECOMMENDATION**
     Respondent.


Petitioner, an inmate in state custody at the Franklin Medical Center Zone B in Columbus, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 3).  This matter is before the Court on respondent's motion to dismiss filed January 28, 2013. (Doc. 7).  Petitioner has filed a brief opposing respondent's motion, and respondent has filed a brief in reply to petitioner's opposition memorandum.  (Docs. 9, 10).[1]

## I.  PROCEDURAL HISTORY

### State Trial Proceedings

In May 2001, the Hamilton County, Ohio, grand jury returned an indictment in Case No. B0103412, charging petitioner with one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32.  (Doc. 7, Ex. 1).  Thereafter, in February 2002, the Hamilton County grand jury returned another indictment in Case No. B0200720, charging petitioner with the following additional criminal offenses:  three counts of tampering with records

---

[1] Also pending before the Court is petitioner's recently filed motion for clarification (*see* Doc. 11), which has been ruled on by the undersigned in a separate order issued this date.

in violation of Ohio Rev. Code § 2913.42(A)(1); three counts of forgery in violation of Ohio Rev. Code § 2913.31(A)(3); and one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1).  (*Id.*, Ex. 49).

Petitioner initially entered a plea of not guilty in Case No. B0103412.  However, on March 25, 2003, he waived his right to a jury trial and entered a guilty plea to the corrupt activity charge in exchange for the dismissal of the indictment in Case No. B0200720.  (*See id.*, Exs. 2-3 & Tr. 2).  The plea entry signed by petitioner and counsel for both parties provided in pertinent part that petitioner faced a potential sentence range of two to eight years and that after release from prison, he faced "up to 3 years of post-release control."  (*Id.*, Ex. 2).  Before accepting petitioner's guilty plea, the trial court conducted a hearing to ensure that petitioner was entering the plea knowingly, intelligently, and voluntarily.  At that hearing, petitioner was specifically reminded of the charge to which he was pleading, the maximum possible penalty that could be imposed, and the rights he was giving up by entering a guilty plea.  (*See id.*, Tr. 2-7).  When questioned by the trial judge, petitioner affirmed that he had read and discussed the plea and jury waiver forms with his attorney, that he understood the forms and had signed them of his "own free will," that he was entering the plea of his "own free will," and that no one had "made any threats or promises to induce [him] to plead against his own will."  (*Id.*, Tr. 3, 5).  At the close of the hearing, the trial court scheduled a May 15, 2003 sentencing hearing date and specifically warned petitioner, who was released on bond, that "if [he] did not show up for sentencing, [the court] would reserve the right to impose any fitting penalty up to the maximum when [he was] caught."  (*Id.*, Tr. 8).  Apparently, at petitioner's request, the sentencing hearing was later continued to June 19, 2003.  (*See id.*, Ex. 13, p. 1).

2

It appears from the record that after petitioner entered his guilty plea, but prior to the scheduled sentencing hearing date, the Hamilton County grand jury returned a third indictment against petitioner in Case No. B0304775 based on a new incident "involving . . . credit cards." (*See id.*, Tr. 12, 17). Upon review of the on-line docket records maintained by the Hamilton County Clerk of Courts for Case No. B0304775,[2] it appears that the incident forming the basis for the new charges occurred on May 14, 2003 and that an indictment was returned on May 30, 2003 charging petitioner with one count of engaging in a pattern of corrupt activity and two counts of complicity. Thereafter, petitioner failed to appear for the June 19, 2003 sentencing hearing in Case No. B0103412. At that point, the trial court forfeited petitioner's bond and issued a warrant for his arrest. (*Id.*, Ex. 4).

It appears from the record that petitioner was eventually found in New York, where he was arrested and convicted of crimes committed in that state. (*See id.*, Ex. 11, p. 1; Ex. 13, p. 1; Tr. 15). On January 28, 2005, while he was incarcerated in New York, petitioner filed a motion with the trial court requesting that his bond forfeiture be lifted in Case No. B0103412. (*Id.*, Ex. 6). Petitioner was returned to Ohio in October 2007 after serving nearly five years of the "[t]wo and a third to seven year[]" sentence imposed in the New York case. (*See id.*, Ex. 13, p. 1 & Tr. 15).

On November 21, 2007, the trial court held a sentencing hearing in Case No. B0103412. At that hearing, petitioner, who was represented by new counsel, moved to withdraw his guilty plea. (Id., Tr. 12). Petitioner's counsel presented the following argument in support of the

---

[2] The docket report for Case No. B0304775 can be found on-line at the following link: www.courtclerk.org/case_summary.asp?sec=history&casenumber=B0304775.

motion:

> Judge, I have communicated to my client some pretrial discussions both on the '01 case and the B-0304775 case, where in return for a plea to the felony 2 on the '03 case, there's a high likelihood of a total aggregate sentence of four years on both cases.
>
> My client maintains his innocence and rejected the plea offer. On the '01 case, on the sentencing of the '01 case, your Honor, my client has informed me that back in '03 when he plead[ed], which I believe was March 25th, 2003, he had informed his prior counsel . . . that he wished to withdraw his plea. That was not done. I do not know why.
>
> But nonetheless, he asked me to present the Court today with an oral motion to withdraw his plea on the B-0103412 case. . . .
>
> I realize a long time period has transpired, but nonetheless, if my client did communicate to his counsel the day he made the plea, we feel that would be reasonable that his previous counsel had withdrawn the plea at that time.

(*Id.*, Tr. 12-13). Petitioner also spoke at the hearing, stating that the day after he entered his guilty plea, he had asked his prior counsel to withdraw the plea and to waive his next appearance. (*Id.*, Tr. 13). Petitioner continued:

> He told me he was going to do that because I was in the process of relocating my family. I didn't hear from him for like a month and a half. And after that time, when I heard from him, he informed me that I had another charge that was pending.
>
> And up until that point, at no time did I ever miss a court day, you know what I'm saying, late for court, anything like that. I've never ran nor my intentions were to run. I always came to all of my court dates.

(*Id.*, Tr. 13-14). When the trial court interjected at that point that petitioner "never came back for another court date after" March 25, 2003, petitioner replied that he could not return because he had been placed in the custody of New York. (*Id.*, Tr. 14). Petitioner explained that when the New York police were "serving the warrant for Ohio" on him, they also charged him with "63

counts of fraudulent device." (*Id.*, Tr. 14-15).

At the hearing, the prosecutor vigorously opposed petitioner's motion to withdraw his guilty plea at such a late juncture. (*Id.*, Tr. 16-17). The prosecutor reminded the court that when petitioner entered his plea in March 2003, he was facing two indictments, "the '01 case and the '02 case," and that "[t]he '02 case, which involved numerous counts of forgery and checks, was dismissed in exchange for [the] plea to the '01 case." (*Id.*, Tr. 16). The prosecutor continued:

> I was not trial counsel or prosecutor of record in that case, but it's my understanding that what happened was after all the witnesses who passed all these bad checks eventually were corralled and showed up for court, it was only then that the defendant tendered his plea after he realized all of those witnesses were present. According to him, must have changed his mind the next day.
>
> In any event, it would impose a great hardship on the State of Ohio to recapture or regroup all those witnesses.
>
> Secondly, we would have to now go back and re-indict the '02 case which was dismissed because of the defendant's plea, so there would be prejudice to the State of Ohio, and frankly, it's just not reasonable to do it five, six years later.

(*Id.*, Tr. 17).

The trial court denied petitioner's motion on the record after considering nine factors in accordance with the state-law standard of review governing pre-sentence motions to withdraw guilty pleas. (*See id.*, Tr. 17-21). Specifically, the court found that petitioner had been represented by "highly competent counsel"; that petitioner was "afforded a complete Criminal Rule 11 hearing before entering a plea"; that petitioner was being afforded a "full and impartial hearing on the motion to withdraw the plea;" that the motion "was not made within a reasonable time"; and that although petitioner did "state specific reasons on the record" for his motion to withdraw his guilty plea, the record revealed that petitioner "understood the nature of the charges

and the possible penalties" he faced when he entered his guilty plea and did not support a finding

that "there is a legitimate possibility that he's not guilty of the charges or that he had a complete

defense to the charge." (*Id.*, Tr. 19-21).  Finally, the court found as "one of the main factors" for

its decision that "the State would be greatly prejudiced" if petitioner were permitted to withdraw

his plea; the court reasoned:

> [T]he case started about six years ago and the witnesses were all here on the day of
> trial.  And the defendant, when confronted with the case against him on that day
> with all the witnesses rounded up by the State, decided to enter a plea.  But now
> that it's four years later, it would be nearly impossible for the State to locate all the
> witnesses that were here on the day the defendant entered the guilty plea.

(*Id.*, Tr. 20-21).

The court then proceeded to the sentencing phase of the hearing.  During that portion of

the hearing, petitioner stated for the first time that he did not "have any idea exactly what [he] was

plea[d]ing to" and that he had signed the plea agreement because his trial counsel had told him

"they was going to give me two years, but it was a distinct possibility that I would have to only

serve 90 days." (*Id.*, Tr. 22-24).  When the trial court pointed out to petitioner that "maybe if you

had shown up for the sentencing and not gone to New York, that could have happened," and that

it was petitioner's "fault for leaving the jurisdiction" in violation of the conditions of his bond,

petitioner stated that the trial judge knew when he was released on bond that "he was leaving the

jurisdiction" because he was living with his family in New York and "traveling back and forth

from New York to Ohio." (*Id.*, Tr. 24-25).

At that point in the colloquy, the court reminded petitioner of the extensive facts that the

prosecutor had presented against him when he entered his guilty plea in March 2003.  (*See id.*, Tr.

25-28).  The court relayed that from October 1, 2000 until March 1, 2001, petitioner "recruited

6

several individuals to cash counterfeit business checks that [petitioner] produced on accounts of several different businesses." (*Id.*, Tr. 25-26). Petitioner had "produced and provided counterfeit Ohio driver's license[s] for these individuals to cash the counterfeit checks"; provided "transportation to various banks throughout Hamilton County where the checks were cashed"; instructed his recruits to cover their thumbs in wax or fingernail polish in order to avoid fingerprint detection when cashing the checks; "received all moneys from the cashing of these counterfeit checks"; and provided his "cohorts [with] a cut of the money at the end of the day." (*Id.*, Tr. 26). The money stolen from the victims of the scheme amounted to $30,000. (*Id.*, Tr. 27). The State had assembled "a total of 12 witnesses" who were "willing and able to testify against [petitioner] on the trial date." (*Id.*, Tr. 27-28).

At the close of the hearing, after listening to the parties' arguments, the court sentenced petitioner to a seven-year term of imprisonment. (*Id.*, Tr. 30). The final judgment entry of conviction and sentence was filed on November 21, 2007. (*Id.*, Ex. 7).[3]

### State Appeal Proceedings (Case No. C080076)

Petitioner did not perfect a timely appeal to the Ohio Court of Appeals, First Appellate District, from the final judgment entry in Case No. B0103412. However, on January 30, 2008, he filed a motion for delayed appeal with the assistance of new counsel for appeal purposes, which was granted. (Doc. 7, Ex. 8-10). In the appeal, Case No. C080076, petitioner's counsel filed a brief on petitioner's behalf, claiming as assignments of error that (1) the trial court abused its

---

[3] Although irrelevant to the case-at-hand because petitioner is not challenging his conviction or sentence in Case No. B0304775, it is noted that on June 2, 2008, petitioner entered a guilty plea in that case to one count of complicity involving forgery and was sentenced on June 4, 2008 to a six-month term of imprisonment to be served concurrently with the sentence imposed in Case No. B0103412.

discretion when it denied petitioner's motion to withdraw his guilty plea prior to sentencing; and (2) the trial court erred when it sentenced petitioner to "more than the minimum term of incarceration for a felony of the second degree."  (*Id.*, Ex. 11).

On October 8, 2008, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment.  (*Id.*, Ex. 13).  In ruling on the first assignment of error, the court concluded that under the applicable state-law standard of review, the "the trial court did not abuse its discretion when it denied Hayes's motion to withdraw his plea."  (*Id.*, p. 2).  In so holding, the appellate court found that the "trial court conducted a complete Crim.R. 11 colloquy with Hayes" and that it appeared from the record that "Hayes understood the charge against him and the potential sentence"; that the "trial court conducted a full and fair hearing on Hayes's oral motion"; that "there is nothing on the record that indicates that Hayes had a complete defense to the charge"; and that the "prejudice to the state if Hayes had been permitted to withdraw his plea after such a long delay is clear."  (*Id.*, pp. 2-3).  In ruling on the second assignment of error, the Ohio Court of Appeals found no support in the record for petitioner's contention that "he had accepted the plea with the understanding that he would receive no more than a two-year prison term."  (*Id.*, p. 3).  The court further held that "[e]ven if there had been an agreement about the sentence that would be imposed, the trial court clearly told Hayes that the court could sentence him to the maximum term of eight years if Hayes did not appear for sentence.  Hayes did not appear for sentencing for over four years."  (*Id.*).  Respondent states that petitioner did not pursue an appeal to the Ohio Supreme Court from the appellate court's decision.  (*Id.*, Brief, p. 7).

**State Post-Conviction Petition**

In September 2008, while his appeal was pending before the Ohio Court of Appeals,

8

petitioner filed a *pro se* petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 with the trial court in Case No. B0103412.  (Doc. 7, Ex. 14).  In the petition, petitioner claimed for the first time that his original trial counsel was ineffective for (1) failing to prepare a defense, (2) failing to "turn[] over . . . discovery material" to petitioner; (3) failing to "raise a significant constitution[al] claim" challenging petitioner's arrest without a warrant in Case No. B0200720; (4) failing "to state in open court the underlying agreement upon which the [guilty] plea was based"; (5) failing to file a motion to withdraw the guilty plea, which petitioner claimed he asked his counsel to file on March 26, 2003, or to inform petitioner of "his next court appearance"; and (6) coercing petitioner to enter a guilty plea "without preparing adequate defense, or investigating mitigating evidence, and without interviewing defense character witnesses."  (*Id.*).

On September 25, 2008, the trial court denied the motion for post-conviction relief.  (*Id.*, Ex. 15).  Petitioner did not pursue an appeal from that decision in the state courts.  (*See id.*, Brief, p. 8).  Petitioner claims that he was not served with a copy of the September 25, 2008 ruling and was not aware that a decision had been rendered in the matter until he was notified of the decision by the Ohio Public Defender's Office in a letter dated May 21, 2010.  (See Doc. 9, pp. 2, 5 & Ex. 10).

### Application To Reopen Appeal (Case No. C080076)

On January 5, 2009, petitioner next filed a *pro se* application with the Ohio Court of Appeals, First Appellate District, requesting that the appeal proceedings in Case No. C080076 be reopened.  (Doc. 7, Ex. 16).  In the application filed pursuant to Ohio R. App. P. 26(B), petitioner alleged that his appellate counsel was ineffective for failing to assert various assignments of error, including claims challenging the validity of petitioner's guilty plea due to the ineffectiveness of

9

petitioner's original trial counsel and the failure of the trial court to inform petitioner at the plea hearing of a three-year term of post-release control.  (*See id.*).

On June 17, 2009, the Ohio Court of Appeals denied the reopening application on the ground that petitioner had failed "to sustain his burden of demonstrating a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel" under the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). (*See id.*, Ex. 18).  The court reasoned in pertinent part:

> In his application, Hayes contends that he was denied the effective assistance of counsel because his appellate counsel failed to assign as error the trial court's failure to comply with Crim.R. 11 in accepting his guilty plea by inadequately advising him concerning postrelease control.  During the Crim.R. 11 colloquy, the trial court did not advise Hayes that he would be subject to a mandatory three-year term of post-release control.  But the court did "mention" postrelease control, when it advised him of the penalties for violating the sanction's conditions.  And Hayes stated that he understood, and had reviewed with counsel, his plea form, which accurately reflected the duration and mandatory nature of his postrelease control.  Under the circumstances, Hayes must be said to have subjectively understood the implications of his plea, and the trial court must be said to have substantially complied with Crim.R. 11(C)(2)(a).  Therefore, appellate counsel was not deficient in failing to assign the matter as error.
>
> Hayes also challenges appellate counsel's effectiveness in advancing the assignment of error challenging the overruling of his motion to withdraw his guilty plea.  Appellate counsel, Hayes insists, should have argued that his guilty plea was the unknowing, unintelligent, and involuntary product of his trial counsel's ineffectiveness.  But appellate counsel did argue trial counsel's ineffectiveness, and we overruled the assignment of error upon our determination that Hayes had entered his plea knowingly, intelligently, and voluntarily.  Thus, to the extent that this proposed challenge to trial counsel's competence is based on matters reflected in the record, Hayes has failed to satisfy App.R. 26(B)(2)(c)'s requirement that he set forth an assignment of error or arguments in support of an assignment of error that have not been "previously *** considered on the merits in the case by an appellate court."  And to the extent that this challenge depends for its resolution on matters outside the record, appellate counsel cannot be said to have violated a duty to Hayes in failing to advance it in his direct appeal, because the appropriate vehicle for presenting it is a postconviction petition.

(*Id.*, pp. 2-3) (footnotes with citations omitted).

Petitioner did not perfect an appeal to the Ohio Supreme Court from the denial of his reopening application.  (*See id.*, Brief, p. 10; *see also* Doc. 9, p. 3).  Apparently, petitioner attempted to file a motion for leave to file a delayed appeal with the Ohio Supreme Court, but his pleadings were not filed and were returned to him by letter dated July 24, 2009 from the Ohio Supreme Court clerk's office on the ground that "[p]ursuant to Rule II, Section 2(A)(4)(c) of the Rules of Practice of the Supreme Court of Ohio, the Clerk's Office must refuse to file motions for delayed appeal involving App.R. 26(B)."  (*See* Doc. 9, p. 3 & Exs. 3-4).[4]

### Motion To Vacate Or Set Aside Conviction (Case No. C080076)

On February 1, 2010, nearly eight months after his reopening application was denied by the Ohio Court of Appeals, petitioner next filed a *pro se* motion entitled "Motion To Vacate[] Or Set Aside Conviction" in the original appeal proceedings (Case No. C080076).  (Doc. 7, Ex. 19). In the motion, petitioner presented the following "assignments of error":

1.  Court of Appeals erred in not answering defendant's second assignment of error in his Rule 26(B) application.

2.  Court of Appeals erred in denying defendant's First assignment of error in his Rule 26(B) application . . . without reviewing the documents, letters, and transcripts.

3.  Trial court erred in ignoring the mandate of Crim. R. 11(C)(2)(a).  In accepting the pleas of guilty without notifying the defendant he m[a]y be subject to a

---

[4] It is noted that in the July 24, 2009 letter, petitioner was also informed that if he was attempting to appeal the Ohio Court of Appeals' June 17, 2009 decision, he could "timely perfect an appeal by filing a notice of appeal, a memorandum in support of jurisdiction . . ., and an affidavit of indigency no later than Monday, August 3, 2009." (Doc. 9, Ex. 4).  A copy of the Rules of Practice of the Supreme Court of Ohio was provided to petitioner for "additional guidance."  (*Id.*). Apparently, petitioner did not attempt to file an appeal with the Ohio Supreme Court by August 3, 2009 in accordance with the instructions set forth in the July 24, 2009 letter.

mandatory term of three years of post-release control, as the statute required R.C. 2967.28(B)(2), (C).

4.  Tr[ia]l counsel was ineffective because, counsel prepare[d] no defense.

5.  Tr[ia]l counsel was ineffective because, counsel never turned over evidence[] to defendant and ha[d] not view[ed] the evidence himself.

6.  Tr[ia]l counsel was ineffective because, counsel fail[ed] to raise significant constitution[al] claim.

7.  Tr[ia]l counsel was ineffective because, counsel didn't disclose negotiated plea on record.

8.  Tr[ia]l counsel was ineffective because, counsel never withdrew plea/ and tell defendant about court date.

9.  Tr[ia]l counsel was ineffective because, counsel coerced defendant's plea.

10.  Trial court erred in ignoring the mandate of Criminal Rule 11.

(*Id.*, Ex. 19).

On February 18, 2010, the Ohio Court of Appeals overruled the motion to vacate or set aside conviction without opinion.  (*Id.*, Ex. 20).

Over two years later, on April 27, 2012, petitioner filed *pro se* notices of delayed appeal to the Ohio Supreme Court from the appellate court's February 18, 2010 ruling. (*Id.*, Exs. 21-22).  Petitioner claimed as cause for his delay in filing that "[t]he Court of Appeals never sent the court's judgment entry and opinion" to him.[5]  (*Id.,* Ex. 21).  On June 6, 2012, the Ohio Supreme Court denied petitioner's motion for delayed appeal and dismissed the case without opinion.  (*Id.*, Ex. 23).

---

[5] It is noted that although petitioner has claimed he was never served with a copy of the Ohio Court of Appeals' February 18, 2010 decision, it appears from the record that petitioner was informed of the decision in a letter dated May 21, 2010 from the Ohio Public Defender's Office.  (*See* Doc. 9, p. 4 & Ex. 10).

**State Proceedings:  Post-Sentence Motion To Withdraw Guilty Plea**

On August 23, 2010, over six months after the Ohio Court of Appeals denied his motion to vacate or set aside conviction, petitioner filed a *pro se* motion to withdraw his guilty plea in Case No. B0103412, as well as accompanying motions to expand the record, for findings of fact and conclusions of law to be entered by the trial court in ruling on the motion to withdraw plea, and for pauper status and appointment of counsel to represent him on appeal.  (Doc. 7, Ex. 24). Petitioner claimed in his motion to withdraw his guilty plea that his plea was "not knowing[ly], voluntarily and intelligently made" because (1) he was not informed that he would be "subject to a mandatory term of three years of post-release control"; and (2) his original trial counsel coerced him into signing the plea agreement and did not withdraw his plea as requested by petitioner "less than one half hour after plea agreement signed."  (*See id.*).

On December 13, 2010, the trial court issued orders summarily denying petitioner's motion to withdraw his guilty plea and his accompanying motions.  (*Id.*, Exs. 25-28).  Petitioner did not perfect a timely appeal from the December 13, 2010 rulings to the Ohio Court of Appeals, First Appellate District.

**1.    Petitions for "Writ of Procedendo" and Mandamus.**

However, on March 7, 2011, petitioner filed a *pro se* motion for "Writ of Procedendo" with the Ohio Court of Appeals, First Appellate District, requesting the issuance of an order requiring the trial court to enter judgment on his motion to withdraw his guilty plea and to rule on his motions to expand the record, for findings of fact and conclusions of law, and for pauper status on appeal.  (Doc. 7, Ex. 29).  Counsel for the respondent filed a motion to dismiss the petition "for mootness" given that the trial court had previously denied all of the motions on

December 13, 2010.  (*Id.*, Ex. 30).  The trial court's December 13, 2010 orders were attached as exhibits to the motion to dismiss, which was served on petitioner on March 11, 2011.  (*See id.*).  On March 29, 2011, the Ohio Court of Appeals granted the State's motion to dismiss and dismissed the petition.  (*Id.*, Ex. 31).

Thereafter, on April 26, 2011, petitioner filed a petition for writ of mandamus with the Ohio Court of Appeals, First Appellate District, requesting the issuance of an order requiring the "trial court/clerk of court to issue it[]s judgment dated December 13, 2010 in accordance with Civ[.] R. 58(B) and App[.] R. 4(A)."  (*Id.*, Ex. 32).  Respondent's counsel filed a memorandum opposing the petition.  (*Id.*, Ex. 33).  In that pleading, counsel pointed out that petitioner had previously been served with copies of the trial court's December 13, 2010 orders in the prior "Writ of Procedendo" proceeding.  (*Id.*).  Counsel also stated that because petitioner appeared to be arguing that he had not received any of the trial court's rulings, "counsel for Respondent is attaching copies of these entries to the current Memorandum in Opposition, and they will be mailed to Hayes upon the filing of this response."  (*Id.*).  On May 24, 2011, the Ohio Court of Appeals summarily dismissed the action.  (*Id.*, Ex. 34).  In the entry dismissing the petition, the court stated only that "[t]he caption of the petition for a writ of mandamus was defective and failed to name or serve the parties."  (*Id.*).

On June 20, 2011, petitioner filed yet another petition for writ of mandamus with the Ohio Court of Appeals, First Appellate District, again requesting the issuance of an order requiring "the trial court to issue it[]s judgment dated December 13, 3010 in accordance with Civ[.] R. 58(B)" so that he could file an "appeal of right in accordance with App. R. 4(A)."  (*Id.*, Ex. 35).  In the memorandum filed in opposition to the petition, respondent's counsel stated that because

14

petitioner still appeared to be arguing that he had not received the trial court's rulings, "[f]or the third time, counsel for Respondent is attaching copies of these entries to the current Memorandum in Opposition, and they will be mailed to Hayes upon the filing of this response." (*Id.*, Ex. 36). On July 20, 2011, the Ohio Court of Appeals dismissed the action "as moot." (*Id.*, Ex. 37).

Petitioner filed a timely notice of appeal to the Ohio Supreme Court from the Ohio Court of Appeals' July 20, 2011 entry. (*Id.*, Ex. 38). In his *pro se* "merit brief," petitioner asserted as the sole proposition of law that "[f]or due process purposes Pro Se litigants are entitled to reasonable notice of the trial courts' appealable orders pursuant to Civil Rule 58." (*Id.*, Ex. 39). On December 1, 2011, the Ohio Supreme Court affirmed the Ohio Court of Appeals' judgment. (*Id.*, Ex. 40). The court reasoned in pertinent part:

> Insofar as Hayes sought to compel [the trial court judge] to rule on his motions, the judge has already done so. Mandamus will not compel a judge to rule on motions that the judge has already ruled on. . . . And as for Hayes's claim that he could not appeal the rulings because the clerk never served notice of judgments on him, he had adequate remedies in the ordinary course of law by delayed appeal and motion for relief from judgment to raise his claim.

(*Id.*) (citations omitted).[6]

## 2. Motion For Delayed Appeal.

On December 27, 2011, petitioner next filed a *pro se* notice of appeal and motion with the Ohio Court of Appeals, First Appellate District, requesting leave to file a delayed appeal from the trial court's December 13, 2010 rulings denying his post-sentence motion to withdraw his guilty plea and accompanying motions. (Doc. 7, Exs. 43-44). On January 25, 2012, the Ohio Court of Appeals overruled the motion for delayed appeal on the ground that "appellant has failed to

---

[6] Petitioner filed a motion for reconsideration, which was denied without opinion on February 1, 2012. (Doc. 7, Exs. 41-42).

provide sufficient reasons for failure to perfect an appeal as of right." (*Id.*, Ex. 45).

On May 14, 2012, petitioner filed a notice of appeal and motion for delayed appeal to the Ohio Supreme Court. (*Id.*, Exs. 46-47). Petitioner claimed that he was unable to file a timely appeal because he was housed in a prison facility where he had "very limited access" to the law library, which was also inadequate. (*See id.*, Ex. 47). On July 5, 2012, the Ohio Supreme Court denied petitioner's motion for delayed appeal without opinion. (*Id.*, Ex. 48).

### Federal Habeas Corpus

The instant action commenced on September 27, 2012, when petitioner filed an application to proceed *in forma pauperis* in connection with his *pro se* petition for federal habeas corpus relief. (*See* Doc. 1). The petition was stamped as "filed" on October 1, 2012 when petitioner was granted pauper status. (*See* Docs. 2, 3). Under the federal prison mail-box rule, however, the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing, *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Here, it is presumed for statute of limitations purposes that the petition was filed on September 24, 2012, the date that petitioner states that he placed the petition in the prison mailing system for delivery to the Court. (*See* Doc. 3, p. 34).

In the petition, petitioner alleges eight grounds for relief:

**Ground One:** Trial court erred in ignoring the mandate of Criminal Rule 11(C)(2)(A), R.C. 2967.28(B)(2), (C). In accepting the defendant's plea of guilty without notifying the defendant, he is subject to a mandatory term of Post-Release Control, as the statute under Ohio's State law required. Criminal Rule 11(C)(2)(A), R.C. 2967.28(B)(2), (C) in violation of the fifth and fourteenth

16

Amendments of The United States Constitution.

**Ground Two:**  The trial court violated the defendant's due process and equal protection rights when it accepts a guilty plea that the court knows the defendant entered unknowingly, involuntarily and unintelligently in violation of Criminal Rule 11(C)(2)(A), R.C. 2967.28(B)(2), (C) of the Ohio code and the fifth and fourteenth Amendments of The United States Constitution.

**Ground Three:**  Trial counsel was ineffective because, Counsel never turned over evidences to defendant and had not view[ed] the evidence himself.  Hayes was denied effective assistance of counsel in violation of the sixth and fourteenth Amendments of The United States Constitution.

**Ground Four:**  Trial counsel was ineffective because, Counsel prepare[d] no defense[.]  Hayes was denied effective assistance of counsel in violation of the sixth and fourteenth Amendments of The United States Constitution.

**Ground Five:**  Trial counsel was ineffective because, Counsel coerced Hayes['s] plea.  Hayes was denied effective assistance of counsel in violation of the sixth and fourteenth Amendments of The United States Constitution.

**Ground Six:**  Trial counsel was ineffective because, Counsel never withdrew plea in a timely ma[nn]er or t[old] defendant about his next court date.  Hayes was denied effective assistance of counsel in violation of the sixth and fourteenth Amendments of The United States Constitution.

**Ground Seven:**  Trial counsel was ineffective because, counsel fail[ed] to raise significant constitutional claim in violation of the fourth, fifth and fourteenth Amendments of The United States Constitution.

**Ground Eight:**  Trial counsel was ineffective because, Counsel never disclosed negotiated plea on the record.  Hayes was denied effective assistance of counsel in violation of the sixth and fourteenth Amendments of The United States Constitution.

(Doc. 3, pp. 6, 9, 12, 17, 20, 23, 26, 29).

Respondent has filed a motion to dismiss the petition.  (Doc. 7).  Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas petitions, which is set forth in

28 U.S.C. § 2244(d).  (Doc. 7, pp. 23-29).  Respondent also alternatively argues that all of petitioner's claims are barred from review due to petitioner's numerous procedural defaults in the state courts, which precluded petitioner from completing "one complete round of state court's established appellate review process to include the highest court of the state."  (*Id.*, pp. 29-30).

Petitioner opposes respondent's motion to dismiss and also requests an evidentiary hearing.  (Doc. 9).  Petitioner essentially contends that his petition is timely and that, in any event, he is entitled to equitable tolling of the statute of limitations because (1) he has been diligent in pursuing his claims for relief, and (2) the failure of the state courts to provide him with copies of certain decisions has amounted to a state impediment to filing.  (*Id.*, pp. 2-11).  He also appears to argue that any procedural default should be excused because the state courts erred "as a matter of state and federal law" when they prevented him from "fully and fairly" litigating his claims on the merits.  (*See id.*, pp. 11-12).  Respondent has filed a reply brief in response to petitioner's opposition memorandum.  (Doc. 10).[7]

## II.  RESPONDENT'S MOTION TO DISMISS (DOC. 7) SHOULD BE GRANTED BECAUSE PETITIONER PROCEDURALLY DEFAULTED AND HAS WAIVED HIS CLAIMS FOR RELIEF

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v.*

---

[7] Respondent's motion for leave to file a reply brief was granted in a notation order that was entered on March 14, 2013.

*Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision.  *See Harris,* 489 U.S. at 260-62.  The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  In those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and considered the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane,* 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The Court stated:  "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state

practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493

21

F. App'x at 669.  *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed numerous procedural defaults, which deprived the Ohio Supreme Court of the opportunity to consider any of petitioner's grounds for relief.

First, to the extent that petitioner alleges claims of error that are based on evidence contained in the trial court record, he failed to present any of his grounds for federal habeas relief as assignments of error in his appellate brief to the Ohio Court of Appeals.  In the brief filed by petitioner's appellate counsel, petitioner claimed in one assignment of error that the trial court abused its discretion under state-law standards when it denied his presentence motion for withdrawal of his guilty plea.  (*See* Doc. 7, Ex. 11).  However, in so arguing, petitioner did not claim that the trial court committed error of federal constitutional dimension, nor did petitioner challenge the validity of the guilty plea itself.[8]

Petitioner did later attempt to raise his claims for federal habeas relief in the appeal proceedings by (1) first filing an application for reopening of the appeal alleging ineffectiveness on the part of his appellate counsel for failing to assert the claims as assignments of error on appeal; and (2) when the reopening application proved unsuccessful, next filing a motion to

---

[8] It is noted that if petitioner had asserted any such claims in his appellate brief to the Ohio Court of Appeals, as he has alleged in the instant petition, an argument could be made that this action should be stayed or dismissed without prejudice so that petitioner can pursue the arguably available remedy of a delayed appeal to the Ohio Supreme Court.  *See* Ohio S.Ct.Prac.R. 7.01(A)(4)(a). It is likely, however, that any motion for delayed appeal to the Ohio Supreme Court from the Ohio Court of Appeals' October 8, 2008 direct appeal decision would prove futile at this late juncture.  In any event, because petitioner has not alleged any ground for relief that was also presented as an assignment of error in his appellate brief to the Ohio Court of Appeals, the remedy of a delayed appeal to the Ohio Supreme Court is not even arguably available in this case.

vacate or set aside conviction with the Ohio Court of Appeals. However, petitioner committed additional procedural defaults because he did not perfect an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' denial of his reopening application on June 17, 2009 and failed to file a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' February 18, 2010 decision overruling his motion to vacate or set aside conviction. (*See* Doc. 7, Exs. 18, 20, 23; Doc. 9, p. 3 & Ex. 4).

Petitioner is unable at this point to pursue an appeal to the Ohio Supreme Court from the denial of his reopening application because the provision permitting delayed appeals to the Ohio Supreme Court in felony cases does not apply to appeals brought pursuant to Ohio R. App. P. 26(B). *See* Ohio S.Ct.Prac.R. 7.01(A)(4)(c). Moreover, even assuming petitioner could bring a motion to set aside or vacate conviction in the Ohio Court of Appeals after the issuance of the direct appeal decision and denial of his reopening application, the Ohio Supreme Court relied on an adequate and independent state ground when it denied petitioner's motion filed in April 2012 requesting leave to file a delayed appeal from the Ohio Court of Appeals' February 18, 2010 decision. *See Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see generally Harris,* 489 U.S. at 260-62. As the Sixth Circuit explained in *Bonilla*, "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). In this case, as in *Bonilla,* the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief." *See id.* In such circumstances, it must be assumed that the state court enforced the applicable procedural bar to review. *See id.* (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

Second, to the extent that petitioner alleges claims of error that are based on evidence outside the trial court record, petitioner procedurally defaulted claims that were asserted in his state post-conviction petition because he never pursued an appeal from the trial court's September 25, 2008 decision denying his petition for post-conviction relief.  (*See* Doc. 7, Ex. 15).

Finally, when petitioner attempted to obtain relief from the state courts by filing a post-sentence motion to withdraw his guilty plea in August 2010, he failed to pursue a timely appeal from the trial court's denial of his motion to the Ohio Court of Appeals and, thereafter, failed to pursue a timely appeal to the Ohio Supreme Court from the appellate court's ruling denying a delayed appeal.  (*See id.*, Ex. 24).  The Ohio Court of Appeals clearly and expressly relied on an adequate and independent state ground when it denied petitioner's delayed appeal motion on the ground that petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right."  (*Id.*, Ex. 45).  *See also Stone v. Moore*, 644 F.3d 342, 347-48 (6th Cir. 2011) (holding that the Ohio Court of Appeals' denial of a delayed appeal motion for failure to comply with the requirements of Ohio R. App. P. 5(A) constitutes an adequate and independent state ground for the state court's decision, and that a petitioner's "failure to promptly file his Rule 5(A) motion constituted procedural default").  Moreover, the Ohio Supreme Court relied on an adequate and independent state ground when it denied petitioner's subsequent motion for delayed appeal without opinion. (*See id.*, Ex. 48).  The provision permitting delayed appeals to the Ohio Supreme Court in felony cases does not apply to appeals involving post-conviction relief.  *See* Ohio S.Ct.Prac.R. 7.01(A)(4)(c).  In any event, as discussed above, the Ohio Supreme Court's denial of petitioner's delayed appeal motion was "a procedural ruling, not a ruling on the merits."  *See Bonilla,* 370 F.3d at 497.

24

Because of petitioner's numerous procedural defaults in the state courts, the state's highest court was not provided with an opportunity to consider the merits of any of petitioner's claims for relief.[9]  Therefore, the undersigned concludes that petitioner procedurally defaulted the claims alleged as grounds for relief in the instant action.  The claims are barred from review by this Court unless petitioner can demonstrate cause for and prejudice from his defaults in the state courts or that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice."  *See Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson, supra,* 2012 WL 3241545, at *3.  *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

Petitioner has not demonstrated that failure to consider his claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent."  *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  To establish a credible claim of actual innocence sufficient to overcome a procedural bar to review, the petitioner must "establish in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'"  *House v. Bell,* 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327); *cf. Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008).  The standard is "demanding and permits review only in the

---

[9] As respondent has pointed out in the motion to dismiss (Doc. 7, Brief, p. 29), the only time that petitioner obtained review in the Ohio Supreme Court was when he appealed the Ohio Court of Appeals' denial of his final petition for writ of mandamus, in which petitioner requested that the trial court be ordered to provide him with copies of its rulings in the proceedings on his post-sentence motion to withdraw his guilty plea.  In that appeal, petitioner merely challenged the appellate court's ruling granting the respondent's motion to dismiss the mandamus petition on mootness grounds. (*See* Doc. 7, Ex. 39).  The Ohio Supreme Court's review was limited to that issue and did not involve consideration of the merits of the grounds for relief that are asserted in the instant action.  (*See id.*, Ex. 40).

'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327).  Petitioner has only conclusorily contended he is innocent of the charged corrupt activity offense.  He has not satisfied the demanding standard of review required to establish a colorable claim of actual innocence.  Therefore, the procedural bar to review cannot be excused on that ground.

In addition, petitioner has not established cause for his procedural defaults.  Petitioner has alleged that the ineffective assistance of his appellate counsel caused his procedural default in the appeal proceedings.  Although it is well-settled that appellate counsel's ineffectiveness may constitute cause for a procedural default occurring in an appeal as of right to the Ohio Court of Appeals, *see Murray,* 477 U.S. at 488-89, cause cannot be established if the ineffective assistance of counsel claim was itself procedurally defaulted.  *See, e.g., Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011).  Here, as discussed above, petitioner procedurally defaulted his ineffective assistance of appellate counsel claims in the state courts because he failed to perfect an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' June 17, 2009 denial of his reopening application.  When petitioner unsuccessfully attempted to file a motion for delayed appeal with the Ohio Supreme Court, he claimed only that he was indigent and unable to pay the filing fee within the time allotted for pursuing a timely appeal.  (*See* Doc. 9, Ex. 3).  Such an argument is insufficient to excuse petitioner's default of his ineffective assistance of appellate counsel claims, particularly given that the Ohio Supreme Court clerk's office expressly informed petitioner in returning his delayed appeal pleadings on July 24, 2009 that he could still perfect a timely appeal by "filing a notice of appeal, a memorandum in support of jurisdiction . . ., *and an affidavit of indigency*" by August 3, 2009, as well as provided petitioner with a copy of the Ohio Supreme

Court's Rules of Practice for "additional guidance."  (*See* Doc. 9, Ex. 4) (emphasis added).

Therefore, petitioner has waived any argument of "cause" based on his appellate counsel's

ineffectiveness.

Petitioner has also claimed that he was prevented from perfecting an appeal from the trial

court's denial of his state post-conviction petition on September 25, 2008, the Ohio Court of

Appeals' denial of his motion to vacate and set aside conviction on February 18, 2010, and the

trial court's denial of his post-sentence motion to withdraw his guilty plea on December 13, 2010,

because he was never served with copies of those rulings and was not made aware of them until

after the appeal periods had expired.  Assuming, as petitioner has argued, that he was not

informed of the three decisions until after the deadline for filing a timely appeal had passed, it is

clear from the record that petitioner was made aware of the September 25, 2008 and February 18,

2010 decisions in a letter dated May 21, 2010 from the Ohio Public Defender's Office.  (*See* Doc.

9, pp. 2, 4-5 & Ex. 10; *see also* Doc. 7, Ex. 21).  Moreover, petitioner was both informed and

provided with copies of the trial court's December 13, 2010 decision when he was served on

March 11, 2011 with the respondent's motion to dismiss in the "Writ of Procedendo" proceedings

before the Ohio Court of Appeals.  (*See* Doc. 7, Exs. 29-30).  Petitioner never sought to appeal the

trial court's September 25, 2008 decision after he discovered his post-conviction petition had

been denied.  He waited to file a motion for delayed appeal to the Ohio Supreme Court from the

Ohio Court of Appeals' February 18, 2010 decision until April 27, 2012, nearly two years after he

was informed by the Ohio Public Defender's Office of the appellate court's ruling.  (*See id.*, Exs.

21-22).  Finally, petitioner waited to file a motion for delayed appeal to the Ohio Court of

Appeals from the trial court's December 13, 2010 decision until December 27, 2011, months after

receiving copies of the trial court's ruling on or around March 11, 2011. (*See id.*, Exs. 43-44). Petitioner has not provided any justification for his failure to seek appellate review in the state courts within the time normally allotted for filing timely appeals after learning of the state courts' rulings on September 25, 2008, February 18, 2010, and December 13, 2010.[10] He, therefore, is unable to rely on the initial notification delays as constituting cause for his procedural defaults in this case.

In an analogous case, where the petitioner argued that his appellate counsel's failure to inform him of a state court decision constituted cause for his failure to meet the deadline for perfecting a timely appeal, the Sixth Circuit held that "if the period of time between when the defendant learned of the [appellate court] decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal . . ., the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for [appellate] counsel's failure to notify the defendant of the decision." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006) (emphasis in original). Similarly, here, after learning of the state courts' September 25, 2008, February 18, 2010 and December 13, 2010 decisions, petitioner did not take any action to appeal those decisions within the time frame allotted by state law for filing a timely appeal. Therefore, as in *Smith*, petitioner has not demonstrated "prejudice as a result of [the courts'] failure to notify him of [their] decision[s] . . ., and thus he cannot rely on [that reason] to overcome the procedural default of his . . . claims."

---

[10] In addition, with respect to the trial court's December 13, 2010 decision to deny his post-sentence motion to withdraw his guilty plea, petitioner has not provided any explanation for his additional procedural default in failing to file a timely appeal with the Ohio Supreme Court from the Ohio Court of Appeals' January 25, 2012 denial of his delayed appeal motion. Petitioner's general assertion that he was prevented from filing a timely appeal because of the inadequacy and limited availability of the prison law library is simply insufficient to justify his nearly four-month delay in seeking a delayed appeal with the state's highest court. (*See* Doc. 7, Exs. 45-47).

*See id.* at 436; *cf. Gau v. Kelly,* No. 4:09cv2955, 2011 WL 400141, at *6-7 (N.D. Ohio Feb. 4, 2011).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted all of his claims for federal habeas relief.  Because petitioner has not demonstrated cause for his numerous procedural defaults in the state courts or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, respondent's motion to dismiss (Doc. 7) should be granted and petitioner's petition for a writ of habeas corpus (Doc. 3) should be dismissed with prejudice on the ground that it is procedurally barred from federal habeas review.[11]

### IT IS THEREFORE RECO10MMENDED THAT:

1. Respondent's motion to dismiss (Doc. 7) be **GRANTED**, and that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[12]

---

[11] It is noted that the petition may also be time-barred under 28 U.S.C. § 2244(d), but that issue poses closer questions given petitioner's assertions that he was not made aware of certain state court rulings until much later in the state proceedings.  Therefore, the undersigned has decided not to address the statute-of-limitations issue.

[12] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his defaulted grounds for relief.  *See Slack,* 529 U.S. at 484.  However, it is noted that upon review of

29

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

<u>/s/ *Stephanie K. Bowman*</u>
United States Magistrate Judge

---

the record, it does not appear that petitioner's claims raise debatable issues on the merits sufficient to trigger concerns as to whether or not petitioner is entitled to federal habeas relief.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARCUS HAYES,                               Case No. 1:12-cv-740
     Petitioner,

                          Dlott, J.
     vs                                    Bowman, M.J.

WARDEN, FRANKLIN MEDICAL
CENTER ZONE B,
     Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

31